STANDARD FEDERAL SAVINGS BANK, FORMERLY KNOWN AS STANDARD FEDERAL SAVINGS & LOAN ASSOCIATION, APPELLEE, v. STATE FARM FIRE & CASUALTY COMPANY, A CORPORATION, APPELLANT.

537 N.W.2d 333

Filed September 22, 1995.   No. S-93-970.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Thomas J. Young, of Young & LaPuzza, for appellee.

CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and BOSLAUGH, J., Retired.

WRIGHT, J.

Standard Federal Savings Bank, formerly known as Standard Federal Savings & Loan Association (Standard Federal), brought a declaratory judgment action against State Farm Fire & Casualty Company (State Farm) to determine entitlement to benefits under a fire insurance policy. The Sarpy County District Court entered declaratory judgment in favor of Standard Federal and entered judgment for Standard Federal in the amount of $55,200, plus prejudgment interest and attorney fees. State Farm appeals.

## SCOPE OF REVIEW

The construction of an insurance contract or policy is a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994).

## FACTS

This action arises following an explosion on December 22, 1991, which completely destroyed a house at 7504 Susan Court in LaVista, Nebraska. The property had been owned by John J. Steube and Patricia A. Steube, who had procured an insurance policy from State Farm insuring the property from loss by fire or explosion. Prior to the explosion, however, Standard Federal filed a foreclosure petition against the Steubes on July 12. A decree of foreclosure was entered by the Sarpy County District Court on September 20. The court found that Standard Federal was the present owner and holder of the mortgage on the property and that the amount due was $48,703.41 in principal, plus interest. The court ordered a sheriff's sale of the property

20 days after the entry of the decree.

Standard Federal purchased the property for $55,902.74 at the sheriff's sale on November 18, 1991, and filed a motion seeking confirmation of the sale on November 20. On November 25, Standard Federal notified State Farm that the sale had taken place on November 18 and that the title had changed ownership.

The district court confirmed the sale on December 13, 1991, and ordered delivery of the deed upon payment of the sheriff's commission and the filing of a satisfaction. However, no deed was recorded pursuant to that order. The initial confirmation order was vacated, and a second confirmation order was entered on February 21, 1992. Standard Federal filed a satisfaction, acknowledging the reduction of mortgage indebtedness upon the foreclosed mortgage in an amount equal to the foreclosure sale purchase price confirmed by the court. A deed was issued by the sheriff on February 25 and was recorded on March 4.

When State Farm refused to pay benefits based on the policy, Standard Federal filed a declaratory judgment action on June 26, 1992, against State Farm, seeking a declaration that the property was covered by the State Farm policy. Standard Federal alleged that it was the owner and holder of a mortgage securing an interest in real estate described as "Lot 702, in the City of LaVista, as surveyed, platted and recorded in Sarpy County, Nebraska." In its answer, State Farm denied that Standard Federal was the owner and holder of a mortgage at the time of the explosion.

The district court entered a declaratory judgment on August 11, 1993, in which it declared that Standard Federal was covered under the State Farm insurance policy and that coverage was limited to the lesser amount of $55,200 or the amount due on the Steubes' note as of December 22, 1991.

On September 13, 1993, Standard Federal filed an application for further relief, pursuant to Neb. Rev. Stat. § 25-21,156 (Reissue 1989), asking for a money judgment in the amount of $55,200, as well as interest, costs, and attorney fees. The application stated that the amount due Standard Federal under the note and mortgage as of December 22, 1991, was the amount of Standard Federal's bid at the sheriff's sale,

$55,902.74, which is an amount in excess of the limits of the policy.

On September 29, 1993, the district court entered a judgment, taking judicial notice of the August 11 declaratory judgment. The court found that the policy covered damage to the property to the extent of $55,200 and that Standard Federal, as mortgagee, was a loss payee and had commenced a foreclosure on the home. The explosion resulted in damages in excess of $55,200. The parties stipulated that at the time of the explosion, the amount due from the Steubes to Standard Federal under the terms of the note and mortgage was the same amount as that bid at the sheriff's sale, $55,522.83. The court found that Standard Federal should be awarded judgment of $55,200; prejudgment interest under Neb. Rev. Stat. § 45-103.02 (Reissue 1988) from October 30, 1992, to September 28, 1993, of $2,254.28; and an attorney fee of $4,800.

## ASSIGNMENTS OF ERROR

State Farm asserts that the trial court's rulings are contrary to the law and the evidence and that the trial court erred in finding coverage under the policy, in finding that Standard Federal was a beneficiary, in striking a paragraph from its declaratory judgment, and in awarding judgment of $55,200, prejudgment interest of $2,254.20, and an attorney fee of $4,800 to Standard Federal.

## JURISDICTION

We first address Standard Federal's contention that the notice of appeal was not filed within 30 days of the August 11, 1993, declaratory judgment. State Farm's notice of appeal was filed on October 29.

We find that the entry of declaratory judgment by the court on August 11, 1993, did not constitute a final, appealable order. An order is final and appealable when the substantial rights of the parties to the action are determined, even though the cause is retained for determination of matters incidental thereto. *In re Estate of Mithofer*, 243 Neb. 722, 502 N.W.2d 454 (1993); *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993). The declaratory judgment in this case did not determine the entire action. Substantial rights of the parties

remained to be decided. No determination of damages had been made by the court.

Standard Federal filed an application for further relief, pursuant to § 25-21,156, which provides that further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. This court has found it proper to grant leave to a plaintiff, pursuant to § 25-21,156, to apply to the district court "for such further relief as may be deemed necessary to finally terminate the litigation . . . ." *Richardson v. Waterite Co.*, 169 Neb. 263, 276, 99 N.W.2d 265, 275 (1959). In a declaratory judgment action which seeks to determine the validity of a written contract and the rights of the parties to the contract, "the plaintiff may, after a determination thereof in his favor, obtain a judgment for the amount due him under the contract by original petition or by subsequent application in the same proceeding." *Id.* at 276-77, 99 N.W.2d at 275.

In the case at bar, Standard Federal sought further relief after the district court held that Standard Federal was entitled to coverage under the State Farm policy. State Farm timely appealed from the final judgment entered by the district court on Standard Federal's application for further relief, and this court has jurisdiction.

## COVERAGE UNDER THE POLICY

We turn then to the merits of State Farm's appeal, in which the insurance company asserts that the trial court erred in finding coverage under the policy. The policy in question listed Standard Federal as the mortgagee on the declarations page and provided coverage of the dwelling in the amount of $55,200. The mortgage clause of the policy stated:

12. **Mortgage Clause.** The word "mortgagee" includes trustee:

a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

b. If we deny your claim, that denial shall not apply to

a valid claim of the mortgagee, if the mortgagee:

(1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

(2) pays any premium due under this policy on demand if you have neglected to pay the premium; or

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

. . . .

d. If we pay the mortgagee for any loss and deny payment to you:

(1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

The dispute here concerns the interpretation of the mortgage clause. State Farm contends that it is a loss payable or open mortgage clause, because it provides that the loss is payable "as interests appear." Standard Federal asserts that it is a union or standard mortgage clause, which creates a separate and distinct contract between the parties.

We have found no Nebraska cases which address mortgage clauses in a fire insurance policy. Corpus Juris Secundum provides a useful summary of the general law regarding these clauses. An open loss payable mortgage clause provides that the proceeds go first to the mortgagee to the extent of its interest. The mortgagee's only right is to be repaid money it has loaned and to have security of the value of the undamaged mortgaged property as collateral. Under this clause, the mortgagee is not a party to the contract, and there is no separate contract between the mortgagee and the insurance company. The right of the

mortgagee to recover is contingent upon the right of the mortgagor to recover. The mortgagee is in effect an appointee of the mortgagor to receive the insurance money. If a loss occurs after foreclosure, the mortgagor is entitled to the insurance proceeds during the period of redemption, even if the mortgagee is the purchaser of the property. 46A C.J.S. *Insurance* § 1404 (1993).

Under a standard or union clause, the mortgagee is also protected against any loss from an act or neglect of the mortgagor or owner. The clause creates a separate contractual relationship between the insurance company and the mortgagee. The mortgagee receives independent status so that it can recover even if the mortgagor would not be able to recover. The mortgagee can enforce its rights of recovery regardless of any defenses of the insurance company. The mortgagee acquires the right to the insurance proceeds even though it has suffered no actual loss. The mortgagee is required to notify the insurance company of any change in ownership. This clause contemplates the possibility of foreclosure and provides full protection to the mortgagee during foreclosure. The mortgagee is entitled to the proceeds of the policy if the mortgagor fails to redeem, although the mortgagee is the purchaser, and if the insurance proceeds exceed the amount of the mortgage debt. *Id.* Under a standard mortgage clause, it is the mortgagor's, but not the mortgagee's, rights which are cut off by the institution of foreclosure proceedings.

> Moreover a change in the character of interest from that of mortgagee to that of owner, effected by a sale and purchase on foreclosure, is not sufficient to defeat the insurance granted the mortgagee, since it must likewise be considered that the possibility of such a change was within the contemplation of the parties when the contract was made.

10A George J. Couch, Cyclopedia of Insurance Law § 42:746 at 779 (rev. 2d ed. 1982).

Standard Federal points out that Nebraska law requires the use of a standard clause:

> No policy or contract of fire and lightning insurance, including a renewal thereof, shall be made, issued, used,

or delivered by any insurer or by any agent or representative thereof on property within this state other than such as shall conform as nearly as practicable to blanks, size of type, context, provisions, agreements, and conditions with *the 1943 Standard Fire Insurance Policy of the State of New York*, a copy of which shall be filed in the office of the Director of Insurance as standard policy for this state, and no other or different provision, agreement, condition, or clause shall in any manner be made a part of such contract or policy or be endorsed thereon or delivered therewith except as provided in subdivisions (1) through (11) of this section.

(Emphasis supplied.) Neb. Rev. Stat. § 44–501 (Reissue 1993). We do not decide the matter upon whether the terms of the policy comply with the 1943 Standard Fire Insurance Policy of the State of New York, as required by § 44–501. This standard fire insurance policy is not part of the record, and we decline to judicially notice the terms of the policy.

We find that State Farm is obligated to provide coverage because the clause in this policy specifically provided that State Farm could not deny the claim of the mortgagee if the mortgagee complied with subparagraph b. Subparagraph b states that any denial of a claim shall not apply to a valid claim of the mortgagee, if the following conditions are met: (1) the mortgagee notified State Farm of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware; (2) the mortgagee has paid any premium due under this policy on demand if the insured neglected to pay the premium; or (3) the mortgagee submitted a signed, sworn statement of loss within 60 days after receiving notice from State Farm of the insured's failure to so notify. Standard Federal's assertion that it complied with these requirements is supported by the record. Standard Federal notified State Farm on November 25, 1991, that the foreclosure sale had taken place on November 18 and that the title had changed ownership, and the record shows that State Farm was informed of the sheriff's sale. State Farm admitted that Standard Federal submitted a signed, sworn statement of loss. State Farm admitted that there were no premiums due prior to June 1, 1992, and the record

reflects that State Farm canceled the policy on April 27, 1992. Therefore, regardless of whether the clause is interpreted as a loss payable or standard clause, we find that State Farm could not deny coverage under subparagraph b of the mortgage clause.

In our review of an insurance policy, we must construe it as any other contract to give effect to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994). The construction of an insurance contract or policy is a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Katskee v. Blue Cross/Blue Shield, supra*; *Dalton Buick v. Universal Underwriters Ins. Co., supra*. We find that the district court was correct in finding coverage for Standard Federal under the policy.

## CONCLUSION

State Farm has also asserted other errors related to the judgment, but these assignments are not argued in the brief. To be considered by the appellate court, an error must be assigned *and discussed in the brief* of one claiming that prejudicial error has occurred. *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995). Therefore, we will not consider these alleged errors.

Neb. Rev. Stat. § 44-359 (Reissue 1993) provides that the appellate court shall grant an attorney fee for this type of appeal. Standard Federal filed a motion and affidavit pursuant to Neb. Ct. R. of Prac. 9F (rev. 1992). We grant a fee of $3,600 for services in this court.

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., participating on briefs.