EVELYN ELLIOTT AND SANDRA ELLIOTT, INDIVIDUALLY AND DOING BUSINESS AS ELLIOTT RANCH PARTNERSHIP, APPELLANTS AND CROSS-APPELLEES, v. FIRST SECURITY BANK, SUCCESSOR TO FIRST NATIONAL BANK IN MITCHELL, NEBRASKA, APPELLEE AND CROSS-APPELLANT.

544 N.W.2d 823

Filed March 15, 1996.   No. S-93-992.

Kenneth Cobb, of Cobb, Hallinan & Ehrlich, P.C., for appellants.

Benjamin P. King, of Reed & King Law Office, for appellee.

CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Evelyn Elliott and Sandra Elliott, individually and doing business as Elliott Ranch Partnership (debtors), filed suit against First Security Bank (bank) to recover damages for what the debtors claim was wrongful execution against their real property. The bank counterclaimed that the debtors engaged in racketeering activity in violation of federal law.

The debtors appeal a partial summary judgment entered by a district court in favor of the bank that dismissed the debtors' claims regarding (1) the amount of interest the debtors owed to the bank, (2) the amount of net proceeds received by the bank from sheriff's sales, (3) whether the bank wrongfully executed against the debtors' real estate, and (4) whether the debtors were deprived of the use of certain real estate.

The bank cross-appeals the district court's summary judgment, dismissing the bank's counterclaim which alleged that the debtors violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO). See 18 U.S.C. §§ 1961 to 1968 (1982 & Supp. V 1987).

The facts and issues regarding the debtors' petition against the bank, as well as the trial court's partial summary judgment

in favor of the bank, will be treated in part I of this opinion. As to part I, we reverse the trial court's judgment, because the record fails to support the bank's contention that it is entitled to partial summary judgment on the debtors' petition.

The facts and issues regarding the bank's counterclaim against the debtors, as well as the trial court's summary judgment dismissing that counterclaim, will be treated in part II of this opinion. As to part II, we reverse the trial court's judgment, because the record fails to support the debtors' contention that they are entitled to summary judgment on the bank's counterclaim.

## STANDARD OF REVIEW

Parts I and II of this opinion are reviews of two summary judgments. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

## PART I

### ASSIGNMENTS OF ERROR

Restated and summarized, the debtors claim that the district court erred (1) in sustaining the bank's motion for partial summary judgment and (2) in finding that the bank was justified in collecting interest from the time of a sheriff's sale of certain real estate until the date of confirmation of the sale.

### FACTS

On July 24, 1987, Evelyn Elliott owed the bank $8,854.54 in principal and interest on her personal promissory note. A lawsuit by the bank to collect the amount due under Evelyn Elliott's note was pending in the Sioux County Court and was

scheduled to be tried following another hereinafter described lawsuit between the debtors and the bank. Evelyn Elliott's personal promissory note carried an annual interest rate of 12.75 percent.

Also on July 24, 1987, Elliott Ranch, a partnership, Evelyn and Sandra Elliott, as partners and guarantors, were indebted to the bank under two promissory notes (hereinafter referred to as Elliott Ranch notes) in the total principal sum of $226,639.94, plus accrued interest, for a total indebtedness of $257,429.51. A lawsuit to collect the amounts due under the Elliott Ranch notes was pending in the district court for Sioux County. These notes also bore annual interest rates of 12.75 percent. This case was scheduled to be tried on July 30 and 31.

On July 29, Elliott Ranch, a partnership, Evelyn and Sandra Elliott, as partners, individually and as guarantors, entered into a settlement agreement with the bank. Under the agreement, the bank settled the amount due it on the three promissory notes for $257,000 payable as follows: $34,108.62 upon execution of the agreement; $23,500 within 15 days of July 29; and the balance of $199,391.38 within 60 days of July 29.

The agreement further provided that certain consent judgments in favor of the bank in the original amounts of the notes plus interest could be and were, on July 31, 1987, entered in the pending lawsuits. On July 31, the Sioux County Court entered the parties' consent judgment which awarded the bank $8,854.54, with interest thereon at 12.75 percent per annum. On the same day, the district court for Sioux County entered the parties' consent judgment which awarded the bank $257,429.51, with interest at 12.75 percent per annum. Upon full payment pursuant to the settlement agreement, the bank agreed to file satisfactions of its judgments. The settlement agreement further provided that the bank could exercise its rights as a judgment creditor upon the debtors' failure to pay any installment due under the settlement agreement.

The debtors paid the first two installments as required by the settlement agreement. As to the third installment, the debtors gave the bank a certified draft dated September 14, 1987, from Mexico for $199,400, redeemable in current funds (credit) when presented to the drawee at its usual place of business.

The bank moved for determination of default and writ of execution in the district court for Sioux County. On December 1, 1987, the district court found that the debtors' method of payment of the final installment of the settlement was not valid and that, therefore, the debtors had defaulted under the terms of the settlement agreement. The court held that the bank was entitled to a writ of execution for the remaining judgment balance of $199,391.38, plus interest thereon, and that such writ should issue upon the bank's filing of a proper praecipe.

On July 27, 1988, the county court judgment of $8,854.54, together with interest thereon, in favor of the bank was transcribed to the district court.

On August 15, 1988, Elliott Ranch Partnership filed a chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Nebraska. In the bankruptcy petition, under the list of real estate assets rather than under the list of personal property assets, Elliott Ranch Partnership listed only 500 head of cattle valued at $182,500.

In June 1989, the federal bankruptcy court sustained a motion by the bank for relief from the automatic stay regarding real estate in Sioux County owned by the partnership. In the same month, the bank caused the Sioux County sheriff to execute on real estate in Sioux County owned by Evelyn and Sandra Elliott as partners and caused the Scotts Bluff County sheriff to execute on real estate owned by Evelyn Elliott in Scotts Bluff County. The Scotts Bluff County sheriff executed on the real estate after being unable to locate personal property belonging to Evelyn Elliott on which to levy in Scotts Bluff County.

The record reflects that on May 26, 1987 (approximately 1 year after the debtors issued the three promissory notes but 2 months before the bank's collection lawsuits), Evelyn and Sandra Elliott formed the "S&G Living Trust" in which the cotrustees were Evelyn and Sandra Elliott. Approximately all of Evelyn and Sandra Elliott's assets, including the real estate in Scotts Bluff County and in Sioux County, were placed into the S&G Living Trust for their own benefit. The debtors never claimed that the trust was intended to, or did in fact, affect the bank's liens.

The real estate in Scotts Bluff County was sold to the bank at a sheriff's sale for $12,000. The bank never confirmed the sale and never entered into physical possession of the Scotts Bluff County real estate. Subsequently, the bank purchased the real estate in Sioux County for $108,500 at a sheriff's sale.

On September 7, 1989, the federal bankruptcy court dismissed the Elliott Ranch bankruptcy petition because of (1) Elliott Ranch's inability to effectuate a reorganization plan, (2) the large number of frivolous pleadings filed by Sandra Elliott, and (3) Sandra Elliott's willful disobedience of court orders.

Following the dismissal of the bankruptcy petition, the bank caused the Sioux County sheriff to execute on certain personal property owned by the debtors which had been listed in the bankruptcy proceeding and upon which execution had been automatically stayed by the filing of the bankruptcy petition. On October 18, 1989, pursuant to execution, the Sioux County sheriff sold cattle owned by Elliott Ranch and from that sale, $153,637.53 was applied to the bank's judgment. On November 28, also pursuant to an execution, the Sioux County sheriff sold additional cattle owned by the Elliott Ranch and $27,236.36 was applied to the bank's judgment.

One day prior to the October cattle sale, Sandra Elliott filed for personal bankruptcy. The bankruptcy petition listed under Sandra Elliott's personal property 358 head of cattle with a market value of $196,900. In her deposition, Sandra Elliott testified that in the course of her bankruptcy proceeding, she filed an adversary proceeding against the bank which alleged that the bank and the sheriff violated the automatic bankruptcy stay by conducting the sale of the debtors' cattle. Sandra Elliott testified that she dismissed that adversary proceeding. In her affidavit, Sandra Elliott testified that her federal court suits were dismissed without prejudice. On January 17, 1992, the U.S. Bankruptcy Court dismissed Sandra Elliott's bankruptcy petition.

The record reflects that sometime prior to the sheriff's cattle sales, Evelyn and Sandra Elliott transferred ownership of their cattle to a trust entitled "CE Producers." Assets which Evelyn and Sandra Elliott previously transferred to S&G Living Trust were also conveyed to CE Producers. According to Evelyn

Elliott, there was no difference between CE Producers and S&G Living Trust; the parties merely changed the name of the trust to CE Producers. The cattle sold at the October and November 1989 sheriff's sales bore brands registered to CE Producers.

On February 28, 1990, the district court for Sioux County confirmed the sheriff's sale of the Sioux County real estate. The bank continued to charge the 12.75–percent interest up to the time of the confirmation of the Sioux County real estate sheriff's sale. With the confirmation of the Sioux County sheriff's sale and the proceeds of the two cattle sales, the bank's consent judgments against the debtors were satisfied. The bank refunded approximately $18,000 to the debtors, representing proceeds from the sheriff's sales in excess of the bank's judgments, plus accrued interest.

On March 5, 1993, the debtors filed a second amended petition against the bank. In the first cause of action, the debtors alleged that (1) the bank received $169,990.53 from the sheriff's sale of cattle in October 1989, which satisfied the bank's judgment; (2) the bank overexecuted and breached the settlement agreement; (3) the bank deprived the debtors of use of the Scotts Bluff County real estate which was sold to the bank for $12,000, but upon which the bank never sought confirmation; (4) the bank wasted 100 tons of hay valued at $7,000 which was on the Sioux County real estate purchased by the bank; and (5) the bank damaged the credit and reputation of the debtors by refusing to release finance agreements pursuant to the settlement agreement. In a second cause of action, the debtors alleged that the bank fraudulently abused the process by levying execution and causing real estate of the debtors to be sold prior to exhausting debtors' personalty.

The bank filed a motion for partial summary judgment in which it claimed that (1) there was no dispute in the record that the interest rate on the judgment was 12.75 percent, (2) the debtors did not suffer loss of use of the Scotts Bluff County real estate from 1989 through 1991, (3) the bank did not wrongfully cause execution against real estate when personal property was available to satisfy its judgments, and (4) the net proceeds of the two cattle sales were $153,637.52 and $27,236.38, respectively.

The bank's motion for partial summary judgment did not address the debtors' claims regarding wasted tons of hay and the bank's refusal to release finance agreements alleged in the debtors' first cause of action.

The debtors also filed a motion for summary judgment. The debtors' motion claims that (1) the bank must apply the proceeds from the sheriff's sales of real estate on the date of the execution and not on the date of confirmation, (2) the settlement agreement is binding and does not authorize an interest rate charge or the right of the bank to make a claim pursuant to the promissory notes, and (3) the bank is liable for the value of the "wasted" hay on the Sioux County real estate.

On April 7, 1993, the trial court addressed both motions for summary judgment and sustained the bank's motion for partial summary judgment. The debtors appeal from that judgment.

The trial judge's minutes reflect that on July 13, 1993, following the trial court's sustaining of the debtors' motion for summary judgment in their favor as to the bank's counterclaim, which is addressed in part II of this opinion, counsel told the court that the case was over at the trial level and that no jury trial was to be had.

## ANALYSIS

Initially, it is noted that the bank's motion for partial summary judgment did not address all issues claimed in the debtors' petition: namely, whether the bank wasted hay on the Sioux County real estate and whether the bank refused to release finance agreements pursuant to the settlement agreement. To be final, an order must dispose of the whole merits of the case and must leave nothing for further consideration of the court. Thus, when no further action of the court is required to dispose of a pending cause, the order is final. However, if the cause is retained for further action, the order is interlocutory. *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991).

In the case at bar, the inquiry does not end with whether the issues not addressed in the bank's motion for partial summary judgment are sufficient for the trial court to retain a cause of action. It is significant that the debtors filed a motion for

summary judgment in their favor on *their* petition, which was overruled by the district court in the same order in which the court sustained the bank's motion for partial summary judgment on the debtors' petition. Although the denial of a motion for summary judgment is not a final order and thus is not appealable, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both of the motions and may determine the controversy which is the subject of those motions. *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992), *modified on other grounds* 242 Neb. 97, 490 N.W.2d 461.

In this case, the debtors waived any intent to retain any issue for further action because counsel told the court that "this case is over at trial court level" and that "no jury trial [is] to be had" after the court sustained the debtors' motion for summary judgment against the bank's counterclaim. A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct. *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). As a result, the merits of the debtors' petition, in their entirety, are before this court.

Although it was not mentioned by either party, it is incumbent upon this court to address whether the trial court erred in awarding the bank summary judgment when there appears to be a material issue of fact as to whether cattle in which Sandra Elliott had an interest were sold at a sheriff's sale in violation of an automatic stay in her bankruptcy proceeding which was filed the day prior to the sale. The parties do not direct this court to any place in the record where the bankruptcy court granted relief from Sandra Elliott's automatic bankruptcy stay or where the sale was otherwise exempted from the stay. A bankruptcy stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir. 1995). Any act taken in violation of the automatic stay is void. *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995). This prohibition applies equally to state courts and its officers. See *In re Graves*,

33 F.3d 242 (3d Cir. 1994). Since there is a material issue of fact as to whether the sheriff's sale of one debtor's interest in the debtors' cattle was valid, the trial court could not properly grant summary judgment in favor of the bank. Sandra Elliott's adversary proceeding in federal court which alleged a violation of the automatic bankruptcy stay was dismissed without prejudice well after the sale of the cattle. Such action could not retroactively annul any violation of the automatic stay.

Viewing the evidence in the light most favorable to the debtors, there is a genuine issue of material fact surrounding the sale of the debtors' cattle 1 day after Sandra Elliott's bankruptcy petition. Because there is a genuine issue of material fact as to the propriety of the sheriff's sale of the debtors' cattle, the trial court erred in sustaining the bank's motion for summary judgment and it must be set aside.

Because the summary judgment in favor of the bank is being set aside, it is not necessary to address the debtors' other assignments of error.

## PART II

### ASSIGNMENTS OF ERROR

In its cross-appeal, the bank claims that the district court erred in determining that there is no material issue of fact with respect to the bank's counterclaim.

### FACTS

In its counterclaim, the bank alleged that the debtors engaged in a systematic and ongoing scheme to prevent the bank from recovering on its judgments and, therefore, were liable under RICO. The bank specifically alleged that the debtors (1) committed securities and mail fraud by tendering to the bank a nonredeemable draft, (2) defrauded a financial institution by transferring all or substantially all of their personal property and real estate to living trusts for the benefit of Evelyn and Sandra Elliott and selling personal property to a third party to prevent execution, (3) fraudulently filed false affidavits and frivolous petitions in the federal bankruptcy court to prevent the bank from recovering on its judgments, and (4) committed mail fraud by filing false statements to the Internal Revenue Service and making false demands to the bank for payment.

The debtors moved for summary judgment against the counterclaim. The debtors claimed that they (1) were not in or affected by interstate commerce, (2) did not intend to defraud the bank by paying a debt with a draft from a Mexican financial institution, (3) did not injure the bank by transferring assets to trusts because the bank had notice of the trusts and its judgment was satisfied, and (4) had a legal right to file bankruptcy petitions.

The district court sustained the debtors' motion for summary judgment, and the bank appeals from the dismissal of its counterclaim.

There is evidence in the record that the debtors normally sold their steer calves in Torrington, Wyoming.

The record reflects that Sandra Elliott filed in the federal bankruptcy court false judicial decrees discharging the federal bankruptcy court judge, a false default judgment against the bank ordering the bank to pay the debtors $900,000, and a false order canceling a scheduled hearing. The federal bankruptcy court found that her action served only to harass and delay the bank and the court. As a result, the bankruptcy court sanctioned Sandra Elliott, requiring her to pay the bank its costs and attorney fees.

The record further reflects that Sandra Elliott demanded payments from the bank and other third parties based upon false Internal Revenue Service forms, which were not sent to the Internal Revenue Service.

## ANALYSIS

RICO renders criminally and civilly liable any person who uses or invests income derived from a pattern of racketeering activity to acquire an interest in or to operate an enterprise engaged in interstate commerce; who acquires or maintains an interest in or control of such an enterprise through a pattern of racketeering activity; or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a pattern of racketeering activity. *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989); 18 U.S.C. § 1962.

Based upon the evidential record, a fact finder could determine that the debtors were engaged in interstate commerce

by selling their steers in Wyoming. Also to prevail under RICO, the bank must demonstrate that the debtors committed acts of racketeering activity, also known as predicate offenses. See *Delta Pride Catfish v. Marine Midland Bus. Loans*, 767 F. Supp. 951 (E.D. Ark. 1991). RICO requires that the pattern of racketeering activity consists of at least two acts, one of which occurred after October 15, 1970, and the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. *H. J. Inc. v. Northwestern Bell Telephone Co., supra.*

The record reflects that there exists a genuine issue as to material facts establishing whether the debtors committed predicate offenses. As presented in part I of this opinion, in 1987 the debtors tendered a purportedly invalid Mexican draft to the bank as payment on the final installment of the settlement between the debtors and the bank. There is also evidence in the record from which a fact finder could find that in 1989 the debtors used U.S. mail to provide notice to the bank of false judicial decrees the debtors filed in the federal bankruptcy court and false demand letters made out to the bank. The debtors by affidavit claim that they acted in good faith and did not intend to commit the predicate acts alleged by the bank. RICO requires that the defendant's state of mind in a civil prosecution be the same as that required in a criminal prosecution. See *Babst v. Morgan Keegan & Co.*, 687 F. Supp. 255 (E.D. La. 1988). Intent may be inferred from the words and acts of a person and from the facts and circumstances surrounding his or her conduct. See *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995). Although the debtors claim they lack the necessary intent, a fact finder could find intent from their acts and surrounding circumstances.

The bank must prove that alleged predicate acts amount to or otherwise constitute a threat of continued criminal activity and that the predicate acts are related. It is this factor of continuity plus relationship which combines to produce a pattern. See *Sedima, S. P. R. L. v. Imrex Co.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).

Continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct or to past

conduct that by its nature projects into the future with a threat of repetition. *H. J. Inc. v. Northwestern Bell Telephone Co., supra.* A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long–term criminal conduct. *Id.*

From the evidence in the case at bar, a fact finder could find that the predicate acts did extend over more than a few weeks or months. From the evidential record, a fact finder could find that for a 2–year period, 1987 through 1989, the debtors consistently harassed and delayed the bank through false drafts, false court documents and court orders, and false demand letters.

As to the relationship factor, the criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id.*

The debtors rely upon *Cross v. Simons,* 729 F. Supp. 588 (N.D. Ill. 1989) for the proposition that a single scheme to defraud a single victim does not establish a pattern of racketeering activity. However, the U.S. Court of Appeals for the Seventh Circuit, which *Cross v. Simons* relied upon, does not follow such a proposition. The existence of a single victim does not preclude the existence of a pattern of racketeering activity. *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 63 F.3d 516 (7th Cir. 1995). See, also, *Appley v. West,* 832 F.2d 1021 (7th Cir. 1987). Neither does a RICO claim require proof of multiple schemes. See *H. J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

There exists a material issue of fact as to whether the debtors orchestrated an attempt to avoid payment on notes due the bank through deception and connivance. There is evidence in the record from which a fact finder could determine that the debtors used the U.S. mail to send the bank a false payment and court

documents to avoid payment and to unjustifiably demand $900,000 from the bank.

Giving the bank the benefit of all reasonable inferences deducible from the evidence, it cannot be said that the debtors are entitled to summary judgment as a matter of law.

## CONCLUSION

The record fails to support that the bank is entitled to summary judgment as a matter of law regarding the debtors' petition. Likewise, the record fails to support that the debtors are entitled to summary judgment as a matter of law regarding the bank's counterclaim. We reverse the trial court's awarding of summary judgments and remand the matter to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, C.J., participating on briefs.