AMERICAN FAMILY INSURANCE GROUP, APPELLANT,
v. RODNEY L. HEMENWAY, APPELLEE.
575 N.W.2d 143

Filed March 6, 1998.    No. S-96-528.

Eugene L. Hillman and Patricia McCormack, of McCormack, Cooney, Hillman & Elder, for appellant.

Kathleen Koenig Rockey, of Domina & Copple, P.C., for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

STEPHAN, J.

American Family Insurance Group appeals from an order of the district court for Antelope County denying its motion for summary judgment and granting the cross-motion for summary judgment of Rodney L. Hemenway. The district court determined that an exclusion contained in an automobile liability insurance policy which American Family issued to Hemenway was ambiguous and, therefore, should be construed in Hemenway's favor. Based upon our determination that the exclusion is unambiguous and that the uncontroverted facts fall within its scope, we reverse the judgment of the district court and remand the cause with directions to enter judgment in favor of American Family.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 1994, Hemenway was operating a 1985 Ford F82D straight truck (the straight truck) owned by his employer, Keith Wortman, which collided with another vehicle, near the intersection of Highways 13 and 20 in Antelope County, Nebraska. Hemenway had previously purchased a "Family Car Policy," No. 2615-0171-11-53-FPPA-NE, issued by American Family, which was in force at the time of this accident. This policy was not issued for the purpose of certifying proof of finan-

cial responsibility under Neb. Rev. Stat. § 60-528 et seq. (Reissue 1993).

The family car policy's declarations listed Hemenway as the named insured and described a 1987 Chevrolet vehicle by its vehicle identification number. The policy contained the following definitions which are pertinent to this case:

3. **Car** means **your insured car**, a **private passenger car**, and a **utility car.**

. . . .

5. **Private passenger car** means a four-wheel **car** of the private passenger type.

. . . .

9. **Use** means ownership, maintenance, or use.

10. **Utility car** means:

a. A **car** with a rated load capacity of 2,000 pounds or less, of the pickup, van, sedan delivery or panel truck type if not used in any business or occupation.

b. A truck used for farming purposes.

c. A motor home not used for business purposes.

. . . .

14. **Your insured car** means:

a. Any **car** described in the declarations and any **private passenger car** or **utility car you** replace it with. **You** must tell **us** within 30 days of its acquisition.

b. Any additional **private passenger car** or **utility car** of which **you** acquire ownership during the policy period, provided:

1) If it is a **private passenger car, we** insure all of **your** other **private passenger cars;** or

2) If it is a **utility car, we** insure all of **your** other **private passenger cars** and **utility cars.**

**You** must tell **us** within 30 days of its acquisition that **you** want **us** to insure the additional **car.**

c. Any **utility trailer you** own.

d. Any **car** or **utility trailer** not owned by **you** being temporarily used as a substitute for any other vehicle described in this definition, because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction.

Under the heading "**Part I - Liability Coverage**," the policy stated:

> **We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer.**
>
> **We** will defend any suit or settle any claim for damages payable under this policy as **we** think proper.

Under the heading "**Exclusions**," the policy provided: "This coverage does not apply to: . . . 9. **Bodily injury** or **property damage** arising out of the **use** of any vehicle, other than **your insured car,** which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household."

In its operative petition filed on June 28, 1995, American Family alleged that it had denied Hemenway's written demand for liability coverage with respect to the October 20, 1994, accident because the vehicle which Hemenway was operating at the time of the accident had been furnished by his employer for his regular use, and, therefore, the exclusion quoted above was applicable. American Family sought a declaratory judgment that its policy provided no coverage to Hemenway with respect to the accident. In his answer, Hemenway admitted that the straight truck was owned by his employer, Wortman, and was insured by Farmers Mutual Insurance Company of Nebraska. However, he denied that the vehicle was "owned by him or furnished or available for his regular use by him or residents of his household" and alleged that American Family improperly applied the coverage exclusion contained in its policy. Both parties filed motions for summary judgment. Evidence received during a hearing on these motions disclosed the following uncontroverted facts:

Hemenway worked as a general farm laborer for Wortman since 1983. He tended cattle and hogs, worked with crops, and performed maintenance. In addition to a salary, Wortman provided Hemenway with a 1986 Ford pickup truck, owned and insured by Wortman, which Hemenway drove to and from work on a daily basis. As additional compensation, Wortman also provided Hemenway with the use of a house located on Wortman's property.

In the early 1990's, Wortman purchased the straight truck equipped with an 18-foot, steel grain box for use in his farming

operation. When not in use, the straight truck was sometimes garaged in a building located on the property where Hemenway lived. The key was always left in the ignition. Hemenway did not have a separate set of keys for the vehicle.

The straight truck was used by Hemenway and Wortman's other employees to haul silage, corn screenings, and feed grain in conjunction with Wortman's farming operation. Hemenway did not have to ask Wortman's permission each time he used the straight truck; they had an "understanding" that he would use the straight truck when needed "within reason." Although Hemenway had Wortman's permission to use the straight truck in connection with his work, he usually told Wortman when he planned to use it. Wortman was generally aware of when his employees would be using the straight truck because he usually met with them in the morning to discuss the work to be performed that day. Hemenway used the straight truck more frequently than Wortman's other employees and referred to himself as the "main driver" and "principal driver" of the vehicle. Hemenway used the straight truck only in connection with his employment by Wortman and not for personal purposes. Wortman considered Hemenway's use of the straight truck to be "part of his job."

The frequency of use varied. During two or three winter months, the straight truck was seldom used. At other times, Hemenway used the straight truck as necessary in the performance of his duties—never on a daily basis but sometimes as often as four to five times a week. Hemenway estimated that he had used the straight truck "hundreds of times" prior to October 20, 1994, and Wortman acknowledged that during this period, Hemenway had "probably driven [the straight truck] a hundred times . . . ." At the time of the accident on October 20, Hemenway was driving to a grain elevator in Creighton, Nebraska, to pick up feed for Wortman's hogs.

The district court entered summary judgment for Hemenway based upon its determination that the "regular use" exclusion was ambiguous and should therefore be construed against American Family. The district court determined that the "insurance policy issued to [Hemenway] by [American Family] does not define the term 'regular use', does not define by whom it is

to be furnished, and that leaves the court with no alternative but to find said language ambiguous." Thereafter, the court further ordered that the policy "issued by [American Family] to [Hemenway] provide coverage to [Hemenway] under the limits provided therein for any damages that [Hemenway] may be ordered to pay as a result of the two-vehicle automobile accident that occurred on October 20, 1994 . . . ." In subsequent orders, the district court awarded Hemenway attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1993) and denied American Family's motion for new trial. American Family perfected this appeal, and pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals, we removed the matter to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Restated, American Family contends that the district court erred in (1) overruling its motion for summary judgment and sustaining Hemenway's motion for summary judgment, (2) determining that the regular use exclusion contained in Hemenway's personal insurance policy was ambiguous and unenforceable, (3) denying its motion for a new trial, and (4) awarding Hemenway attorney fees.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998); *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997). Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further pro-

ceedings as it deems just. *Elliott v. First Security Bank*, 249 Neb. 597, 544 N.W.2d 823 (1996); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994).

The interpretation and construction of an insurance contract or policy involve questions of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997); *Luedke v. United Fire & Cas. Co.*, 252 Neb. 182, 561 N.W.2d 206 (1997); *Kast v. American-Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460 (1997).

## ANALYSIS

As Hemenway acknowledges in his brief, valid reasons exist for having a regular use exclusion in an automobile liability insurance policy. As one court observed:

> "The [regular use exclusion] represents an attempt on the part of the insurance company to strike a balance between the desire of the insured to be covered, even though not using his own car, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. It is generally held that such a clause covers the insured during infrequent or casual use of a nonowned automobile, but excludes coverage as to another's automobile which the policyholder frequently uses or has the opportunity to use . . . ."

*Crum and Forster v. Travelers Corp.*, 428 Pa. Super. 557, 559-60, 631 A.2d 671, 673 (1993). See, also, *Volpe v. Prudential Property and Cas. Ins. Co.*, 802 F.2d 1 (1st Cir. 1986); *Auto Owners Insurance Co. v. Miller*, 138 Ill. 2d 124, 561 N.E.2d 630, 149 Ill. Dec. 260 (1990); *Farmers Ins. Co. of Arizona v. Zumstein*, 138 Ariz. 469, 675 P.2d 729 (Ariz. App. 1983). The principal issue before us in this case is whether the exclusion was clearly and unambiguously stated in the American Family policy.

In resolving this issue, we are guided by well-established principles of law. The parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligation

under the contract not inconsistent with public policy or statute. *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996); *Leader Nat. Ins. v. American Hardware Ins.*, 249 Neb. 783, 545 N.W.2d 451 (1996). In appellate review of an insurance policy, the policy must be construed as any other contract and effect must be given to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997); *Farm Bureau Ins. Co. v. Bierschenk, supra*; *Standard Fed. Sav. Bank v. State Farm*, 248 Neb. 552, 537 N.W.2d 333 (1995). The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Farm Bureau Ins. Co. v. Bierschenk, supra*; *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 494 N.W.2d 99 (1993). When an insurance contract can fairly be interpreted in more than one way, there is ambiguity to be resolved by the court as a matter of law. *Dahlke v. John F. Zimmer Ins. Agency*, 252 Neb. 596, 567 N.W.2d 548 (1997); *Farm Bureau Ins. Co. v. Bierschenk, supra*; *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995). An ambiguous insurance contract will be construed in favor of the insured, but ambiguity will not be read into insuring language which is plain and unambiguous in order to construe it against the preparer of the contract. *Farm Bureau Ins. Co. v. Bierschenk, supra*; *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996).

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996). Here, we focus on the phrase "regular use" as used in the coverage exclusion. In *Allied Mut. Ins. Co. v. Musil*, 242 Neb. 64, 66, 493 N.W.2d 171, 173 (1992), we considered an automobile liability insurance policy which excluded coverage for damages arising from " 'the ownership, maintenance or use of . . . [a]ny vehicle, other than "your covered auto," which is . . . furnished or available for the regular use of any "family member." ' " In that case, the insured's son who resided in the insured's household was involved in an accident while operating a vehicle owned by the

insured's son's brother. The vehicle was not listed on the insured's policy as a covered vehicle, but was insured under a separate policy obtained by the owner, who also paid the taxes, licensing, repairs, and maintenance on the vehicle. Based upon evidence that the insured's son regularly used his brother's vehicle when the brother did not need it, we held as a matter of law that the vehicle was "available for the driver's regular use while he was a member of the named insured's . . . family." 242 Neb. at 68, 493 N.W.2d at 174. After finding that the exclusion was not preempted by § 60-535 because the policy was not utilized for proof of financial responsibility, we stated:

> Being referred to no statute which prohibits the afore-described family-use exception in a policy of automobile liability insurance not certified as proof of future financial responsibility, and being aware of none, we discern no legal basis for not enforcing the *clear and unambiguous* language of the subject exception.

(Emphasis supplied.) 242 Neb. at 69, 493 N.W.2d at 174-75.

In the instant case, the district court relied on *Ricci v. U. S. Fidelity and Guaranty Co.*, 110 R.I. 68, 290 A.2d 408 (1972), which held that the phrase "regular use" in a similar policy exclusion was ambiguous because there was no indication whether it included business as well as personal use, or "principal use as distinguished from a casual or incidental use." *Id.* at 76, 290 A.2d at 413. Hemenway cites no other cases finding similar policy language to be ambiguous. The majority of courts which have considered regular use exclusions subsequent to *Ricci* have held the phrase "regular use" to be unambiguous as a matter of law, notwithstanding the absence of a specific definition in the policy. See, *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F. Supp. 700 (E.D. Pa. 1997); *Crum and Forster v. Travelers Corp.*, 428 Pa. Super. 557, 631 A.2d 671 (1993); *Woodman v. Hartford Acc. and Indem. Co.*, 27 Mass. App. 1120, 537 N.E.2d 601 (1989); *Grange Insurance v. MacKenzie*, 37 Wash. App. 703, 683 P.2d 221 (1984), *aff'd* 103 Wash. 2d 708, 694 P.2d 1087 (1985); *Foster v. Johnstone*, 107 Idaho 61, 685 P.2d 802 (1984); *Farmers Ins. Co. of Arizona v. Zumstein*, 138 Ariz. 469, 675 P.2d 729 (Ariz. App. 1983); *LeDoux v. Iowa Nat. Mut. Ins. Co.*, 262 N.W.2d 418 (Minn. 1978).

We disagree with the finding of the district court that the absence of specific definitions in the policy for the terms "furnished" and "regular use" left it with "no alternative but to find said language ambiguous." There is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous. Where the terms used in an insurance policy are clear, they are accorded their plain and ordinary meaning. *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996). The ordinary meaning of the word "furnish" is to "provide or supply." Webster's Encyclopedic Unabridged Dictionary of the English Language 575 (1994). The adjective "regular" means "usual," "normal," or "customary." *Id.* at 1209. Thus, we agree with courts which have held that a vehicle is furnished for "regular use" if it is provided for a customary and recurring use, as distinguished from an occasional or incidental one. See, *Commercial Standard Insurance Company v. Haley*, 282 F. Supp. 16 (S.D. Iowa 1968); *Crum and Forster v. Travelers Corp., supra*; *Foster v. Johnstone, supra*; *Farmers Ins. Co. of Arizona v. Zumstein, supra*. We do not perceive and Hemenway does not suggest any other meaning which can reasonably be derived from the policy language at issue. We conclude that the regular use exclusion contained in the American Family policy is not ambiguous.

The interpretation of an unambiguous term or provision in an insurance policy also presents a question of law. *Dahlke v. John F. Zimmer Ins. Agency*, 252 Neb. 596, 567 N.W.2d 548 (1997); *Kast v. American-Amicable Life Ins.*, 251 Neb. 698, 559 N.W.2d 460 (1997). Thus, we must determine whether American Family was justified in denying liability coverage to Hemenway based upon the regular use exclusion contained in its policy. It is undisputed that the straight truck which Hemenway was operating at the time of the accident on October 20, 1994, was not an "insured car" as that term is defined in the policy. It is also undisputed that the straight truck was available for Hemenway's use whenever needed to perform the duties of his employment with Wortman; that both Wortman and Hemenway expected that he would use the straight truck as needed; and that Hemenway actually and routinely used the straight truck whenever needed in connection with his work, driving it at least "a hundred

times" during the 3- to 4-year period preceding the accident. Hemenway's use of the straight truck was clearly recurring and customary, not occasional or incidental. His operation of the straight truck on the date of the accident was not a special or unusual occurrence, but, rather, a normal part of the duties of his employment. See *Farmers Ins. Co. of Arizona v. Zumstein*, 138 Ariz. at 474, 675 P.2d at 734 ("[a] finding that a vehicle is regularly available or furnished for use is even more compelling where . . . the insured is not required to obtain special permission to use the vehicle and the driving is among the employee's duties"). Under the unambiguous language of its policy, American Family did not provide liability coverage to Hemenway with respect to claims relating to the October 20, 1994, accident because he was operating a vehicle other than an "insured car," as defined in the policy, which was furnished and available to him for regular use.

## CONCLUSION

For the reasons stated, we determine that the district court erred in granting Hemenway's motion for summary judgment and denying that of American Family. We reverse the judgment of the district court and remand the cause with directions to enter a declaratory judgment in favor of American Family consistent with our holding that American Family has no obligation under Policy No. 2615-0171-11-53-FPPA-NE to provide liability coverage to Hemenway with respect to the October 20, 1994, accident. Because Hemenway has not prevailed in this action, we deny his motion for attorney fees on appeal pursuant to § 44-359 and Neb. Ct. R. of Prac. 9F (rev. 1996).

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, C.J., participating on briefs.

MCCORMACK, J., not participating.