Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/30/2016 08:09 AM CDT

DONUT HOLDINGS, INC., APPELLANT, V.
WILLIAM RISBERG, APPELLEE, AND
RISBERG STORES, L.L.C.,
INTERVENOR-APPELLEE.

___ N.W.2d ___

Filed September 30, 2016.    No. S-15-851.

1. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial
court's factual findings have the effect of a jury verdict and will not be
disturbed on appeal unless clearly wrong.
2. \_\_\_\_: \_\_\_\_. An appellate court independently reviews questions of law
decided by a lower court.
3. **Actions: Default Judgments: Proof.** In Nebraska, where a defendant
has filed an answer, the fact that the defendant does not appear for trial
does not entitle the plaintiff to a judgment without proof of the facts
constituting the plaintiff's cause of action, unless the facts admitted by
the defendant in the answer make out a prima facie case in the plain-
tiff's favor.
4. **Contracts: Parties: Intent.** An implied in fact contract arises where
the intention of the parties is not expressed in writing but where the
circumstances are such as to show a mutual intent to contract. The
determination of the parties' intent to make a contract is to be gathered
from objective manifestations—the conduct of the parties, language
used, or acts done by them, or other pertinent circumstances surrounding
the transaction.
5. **Contracts: Intent.** If the parties' conduct is sufficient to show an
implied contract, it is just as enforceable as an express contract.

Appeal from the District Court for Lancaster County:
ANDREW R. JACOBSEN, Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for
appellant.

No appearance for appellee.

No appearance for intervenor-appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, KELCH, and FUNKE, JJ.

KELCH, J.

## NATURE OF CASE

This case presents the issue of whether a franchisor has a breach of contract claim against a "holdover franchisee"—a franchisee who continues to receive the benefits of an expired franchise agreement, but fails to make payments to the franchisor per the agreement.

## BACKGROUND

Donut Holdings, Inc. (DHI), is the Nebraska parent corporation of LaMar's Donuts International, Inc. (LaMar's). LaMar's is a franchise company with nine franchisees, including one in Springfield, Missouri. In 2002, the Springfield store was purchased by Risberg Stores, L.L.C., a Missouri entity. At that time, the store was operating under the terms of a 1994 franchise agreement entered into by Risberg Store's predecessor. This case arises from DHI's claim against William Risberg, the owner of Risberg Stores, and Risberg Stores, as intervenor (collectively Risberg Stores), for royalty and marketing fees accruing after June 2009. In Risberg Store's answer to DHI's complaint, Risberg Stores took the position that it did not owe DHI any fees because the parties' written agreement ended in 2004. This action was initially filed in county court and after transferring to district court, a bench trial on the matter was held on March 11, 2015. The evidence presented revealed the following facts.

### FRANCHISE AGREEMENT AND
### COURSE OF DEALING

The 1994 franchise agreement had a 10-year term and a provision for extending the initial term by written request.

When the term ended in 2004, neither Risberg Stores nor DHI took any action to formally extend the terms of the franchise agreement. Instead, Risberg Stores continued to operate the Springfield store and continued to pay DHI royalty and advertising fees, which DHI accepted.

DHI's reports show that Risberg Stores stopped making payments to DHI on June 7, 2009. In a letter dated June 18, 2009, DHI advised Risberg Stores that, because Risberg Stores had not taken any steps to renew the 1994 agreement, the agreement expired in 2004, and that therefore, Risberg Stores should review the provisions of the franchise agreement relating to its obligations upon the expiration of the franchise. The agreement provided that upon the expiration of the franchise, Risberg Stores was to immediately stop using any methods, procedures, and techniques of Lamar's, as well as any trademarks or service marks bearing the Lamar's name. Despite this letter, Risberg Stores continued to operate using the Lamar's system and continued to report its sales to DHI. However, Risberg Stores did not pay any royalties or marketing fees to DHI after June 2009.

In December 2009, DHI sent Risberg Stores another letter stating that, to the extent that the franchise agreement had not expired by its own terms, DHI was terminating the agreement effective immediately, because Risberg Stores had failed to make royalty payments. DHI requested Risberg Stores to communicate a complete and detailed statement of Risberg Store's cost of equipment, supplies, and other inventory bearing the Lamar's trademarks or service marks, so that DHI could decide whether it would exercise its right under the franchise agreement to assume Risberg Store's lease and purchase all items bearing its marks. Despite these letters from DHI, Risberg Stores continued to operate using LaMar's name, mixes, and "trade dress." It continued reporting sales to DHI until February 2010.

In February 2010, Risberg Stores stopped reporting sales to DHI, but the evidence shows that Risberg Stores continued

to use LaMar's system until at least October 31, 2010. In a letter dated October 22, 2010, Risberg Stores informed DHI of its intent to discontinue its operations as a LaMar's store, effective at the close of business on October 31. On November 24, a customer of the Springfield store sent DHI a message via DHI's "LaMar's . . . Customer Comment Form" about the poor customer service she received at the Springfield store that day. Lamar's responded by apologizing and stating, "The [Springfield store] is no longer a part of the LaMar's . . . family. I am sorry you were led to believe they were still a part of LaMar's. The store is under independent ownership." Below the comment form, DHI noted that further action was needed; DHI's president was to request Risberg Stores to remove LaMar's signage. According to Risberg himself, Risberg Stores continued to use the LaMar's system until October 2011. He testified, "It was a very difficult thing for me to do but, you know, I did have to finally withdraw from the LaMar's system. When I did that, which was, I believe, in October of 2011, I stopped using the LaMar's mixes and took down all of the trade dress . . . ." Risberg also testified that Risberg Stores continued to make and sell donuts of the same consistency and quality until May 2012, when the store was sold to a third party.

## Damages

DHI claims that between June 2009 and October 2010, the total amount of unpaid royalties and marketing fees was $33,586 and that by May 2012, the fees accrued to $71,878. Because Risberg Stores stopped reporting its sales in February 2010, DHI calculated the amount of the monthly fees owed after February by averaging the fees from the previous 3 weeks.

## Motion for Default Judgment

Although Risberg Stores was initially represented by counsel and filed an answer to DHI's complaint, its counsel withdrew in October 2012. Risberg Stores did not obtain

replacement counsel and did not participate in the remainder of the proceedings. According to DHI, it filed written motions for a default judgment against Risberg Stores in April 2014 and February 2015. DHI twice renewed its motion during the trial—once prior to the presentation of the evidence and once at the conclusion of the evidence. Rather than ruling at trial, the district court took the motion under advisement. In its order filed August 13, 2015, the district court did not explicitly rule on the motion.

### Ruling on Fees

The district court found that DHI was not entitled to any royalty or advertising fees from Risberg Stores after June 2009. The district court interpreted DHI's June 2009 letter to Risberg Stores as evidence that DHI did not consider the franchise agreement to have continued beyond that date. The district court therefore found that the agreement ended in June 2009 and that thereafter, DHI was not entitled to any payments under the agreement. DHI appeals. Risberg Stores did not file a brief on appeal.

### ASSIGNMENTS OF ERROR

DHI assigns, restated, that the district court erred (1) in failing to grant a default judgment against Risberg Stores, (2) in its findings of fact on the status of the franchise relationship between DHI and Risberg Stores, and (3) in failing to enter judgment in favor of DHI and against Risberg Stores for accrued and unpaid fees under the terms of the parties' franchise agreement.

### STANDARD OF REVIEW

[1,2] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.[1] But an appellate

---

[1] *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

court independently reviews questions of law decided by a lower court.[2]

## ANALYSIS

[3] We first address DHI's argument that the district court erred in failing to grant DHI a default judgment against Risberg Stores. In Nebraska, where a defendant has filed an answer, the fact that the defendant does not appear for trial does not entitle the plaintiff to a judgment without proof of the facts constituting the plaintiff's cause of action, unless the facts admitted by the defendant in the answer make out a prima facie case in the plaintiff's favor.[3] Here, DHI is not entitled to a default judgment against Risberg Stores for breach of contract, because Risberg Stores filed an answer, and, as discussed below, the facts admitted therein do not make out a prima facie case in DHI's favor. Risberg Stores admitted that it previously used the LaMar's name and trademark, but did not admit that the parties were operating under any agreement during the relevant time period. Accordingly, this assignment of error is without merit.

The primary issue in this case is whether Risberg Stores breached a franchise agreement with DHI by failing to pay DHI royalty and advertising fees after June 2009. Although the district court did not make any finding as to whether the parties were operating under an implied in fact contract from 2004 to June 2009, that determination is necessary to conduct a clear analysis. We find that the parties were operating under an implied in fact contract.

[4,5] An implied in fact contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.[4]

[2] *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011).

[3] *Scudder v. Haug*, 201 Neb. 107, 266 N.W.2d 232 (1978).

[4] See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction.[5] If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.[6] Here, Risberg Stores acknowledged that it continued to use the LaMar's system after the 1994 franchise agreement expired and DHI continued to accept royalty and advertising payments from Risberg Stores. Thus, it is clear that the parties' conduct showed a mutual intent to contract.

Although the parties were operating under an implied in fact contract after the 1994 franchise agreement expired, the district court concluded that DHI was not entitled to any fees after June 2009, because any agreement between the parties clearly ended with the June 2009 letter, which the district court interpreted as "evidence that [DHI] was not extending [Risberg Stores] the benefits of the franchise relationship." DHI argues that the district court wrongly focused on the June 2009 letter and that the court should have considered that Risberg Stores continued to use its recipes and trademarks after the letter was sent. While that fact might be relevant to a claim for unjust enrichment, DHI did not assign or argue those theories on appeal, so we need not consider them now.[7]

DHI urges us to adopt the rule that "'[w]here a franchisee continues operation of the franchise after the expiration of a franchise agreement, the parties will be found to have mutually agreed to a new contract with terms to be measured by

---

[5] See *id.*

[6] *Id.*

[7] See, *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996); *Standard Fed. Sav. Bank v. State Farm*, 248 Neb. 552, 537 N.W.2d 333 (1995).

the provisions of the previous contract.'"[8] In our view, this proposed rule is similar to our established rule on implied in fact contracts. Both rules require the court to look to the conduct of the parties in determining whether the parties have agreed to a new contract. However, we need not decide whether to adopt the "new" rule, because we have already determined that the parties entered into an implied in fact contract after 2004. Instead, DHI's hurdle, one which is not addressed by its proposed rule, is when that implied in fact contract ended.

We agree with the district court's finding that the implied in fact contract ended in June 2009 with DHI's letter to Risberg Stores. In the letter, DHI advised Risberg Stores that the 1994 franchise agreement had expired and that Risberg Stores should review the provisions of the franchise agreement relating to its obligations upon the expiration of the franchise. The agreement provided that upon the expiration of the franchise, Risberg Stores was to immediately stop using any methods, procedures, and techniques of Lamar's, as well as any trademarks or service marks bearing the Lamar's name. With DHI directing Risberg Stores to discontinue using the benefits of the franchise agreement, the district court rendered a reasonable reading of the letter that DHI was unwilling to continue to extend benefits. Thus, it was not clearly erroneous for the district court to conclude that DHI's June 2009 letter terminated the implied in fact contract.

DHI also cites *Muller Enterprises, Inc. v. Samuel Gerber Adv. Agcy., Inc.*,[9] for the proposition that "'[w]hen a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule.'" *Muller*

---

[8] Brief for appellant at 14, quoting 62B Am. Jur. 2d *Private Franchise Contracts* § 322 (2015).

[9] *Muller Enterprises, Inc. v. Samuel Gerber Adv. Agcy., Inc.*, 182 Neb. 261, 267, 153 N.W.2d 920, 924 (1967).

*Enterprises, Inc.* is clearly distinguishable, because in that case, the contract had not expired or been terminated. In fact, by the contract's terms, the "duration of the obligation [was] commensurate with [the defendant's] performance."[10] But under the facts of this case, where the contract had been terminated by DHI's own actions, we cannot say that the district court's finding was clearly wrong that Risberg Stores had no contractual obligation to pay DHI fees after June 2009.

## CONCLUSION

The district court did not err in failing to grant DHI a default judgment, because Risberg Stores filed an answer and the answer did not make out a prima facie case in DHI's favor. The district court was not clearly wrong in determining that the June 2009 letter terminated the implied in fact contract, and therefore, DHI was not entitled to fees under the contract.

AFFIRMED.

STACY, J., not participating.

_____

[10] *Id.* at 266, 153 N.W.2d at 924.