IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VANEISER, LLC V. NEBRASKA BANK OF COMMERCE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VANEISER, LLC, APPELLANT AND CROSS-APPELLEE,

V.

NEBRASKA BANK OF COMMERCE, APPELLEE AND CROSS-APPELLANT.

Filed April 4, 2017.    No. A-15-980.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Daniel E. Klaus and Sheila A. Bentzen, of Rembolt Ludtke, L.L.P., for appellant.

Trev E. Peterson, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

VanEiser, LLC, filed suit against Nebraska Bank of Commerce (NBC) in the district court for Lancaster County, challenging NBC's application of funds from the auction sale of VanEiser's assets. The court entered judgment in favor of NBC with respect to the funds applied to a particular deficiency, but it found that NBC was not entitled to an auction fee and entered judgment in favor of VanEiser for those funds. VanEiser appeals and NBC cross-appeals. For the reasons that follow, we affirm.

## BACKGROUND

In 2004, Wesley Heiser and Gregg Vanier formed VanEiser, a Nebraska limited liability company, for purposes of owning and operating a restaurant, and they opened Venue Restaurant (Venue) in Lincoln, Nebraska. Lorin Dagel, executive chef for Venue had an ownership interest

- 1 -

in VanEiser. By 2006, Bruce Bauer was also a member of VanEiser. In 2008, Bauer bought out Vanier's interest in VanEiser and became the majority owner.

In 2008, Bauer, Heiser, Dagel, and Vanier formed another limited liability company, VRP, LLC, to acquire the real estate in Lincoln where Venue operated. VanEiser leased the real estate from VRP to operate Venue, and the rent paid by VanEiser was VRP's only source of income. VanEiser was the only tenant in the VRP property.

VRP borrowed money to purchase the real estate from which Venue operated. Summit Bank of Kansas City originated the U.S. Small Business Administration (SBA) loan which was evidenced by a promissory note dated January 31, 2008 from VRP to Summit Bank in the original principal amount of $1,343,700 (the VRP note). The VRP note was secured by a trust deed (VRP trust deed) and guaranteed by VanEiser (the VanEiser guarantee). Summit Bank assigned its interest in the VRP note, the VRP trust deed, and the VanEiser guarantee to Community Bank of Lincoln (CBL) on February 26.

In 2008, VanEiser obtained a loan from CBL for operating capital, evidenced by a promissory note (the VanEiser note) dated October 2 in the amount of $239,795.05. The VanEiser note was payable on demand. To secure the VanEiser note, Maryanne Heiser, Wesley's mother, signed a commercial pledge and security agreement (Heiser pledge) on October 2, pledging a brokerage account she owned as security for the "Indebtedness" of VanEiser to CBL. The Heiser pledge defines "Indebtedness" as "the indebtedness evidenced by the [VanEiser] [n]ote or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which [VanEiser] is responsible under this Agreement or under any of the Related Documents." "Related Documents" is defined as "all promissory notes . . . guaranties . . . and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness."

CBL became NBC after the execution of the VanEiser note and Heiser pledge as the result of CBL's acquisition in 2010 by a new owner.

On December 7, 2011, as collateral for the VanEiser Note, VanEiser signed a commercial security agreement (the security agreement), granting NBC a lien on all of VanEiser's assets to secure all obligations and indebtedness to NBC. The security agreement contains a cross-collateralization clause, which provides:

> In addition to the Note, this agreement secures all obligations, debts and liabilities, plus interest thereon, of [VanEiser] to [NBC], or any one or more of them, as well as all claims by [NBC] against [VanEiser] or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether [VanEiser] may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

The security agreement also includes a clause providing a right of set off. The same language was used in the security agreement to define "Indebtedness" and "Related Documents" as was used to define those terms in the Heiser pledge.

In approximately 2008 or 2009, VanEiser began having financial difficulties. Eventually, VanEiser had trouble paying rent to VRP, making payments to NBC on the VanEiser note, and paying vendors. VanEiser's operating accounts were also at NBC, and overdrafts were occurring regularly, causing NBC concern. VanEiser's failure to pay rent to VRP resulted in VRP's failure to make payments to NBC and eventual default on the VRP note. NBC attempted to work with VanEiser and VRP and to resolve the financial problems.

A number of meetings between VanEiser members, their counsel, and NBC representatives occurred during the summer of 2011 in an effort to resolve the financial issues. During these meetings, they considered ways of restructuring VanEiser's ownership, including a capital infusion or having the Venue restaurant sold as a going concern to a third party, so VanEiser could pay off its indebtedness to NBC. Eventually, NBC notified VanEiser that unless VanEiser resolved the default on the VanEiser note, NBC would execute on the Heiser pledge. An agreement was reached whereby the individual members of VanEiser ceased all active management of Venue and management was transferred to a consultant, who managed the operations of Venue between June 2011 and February 2012.

VRP defaulted on the VRP note, and in January 2012, NBC exercised the power of sale under the VRP trust deed securing the VRP note. A trustee's sale of the real estate occurred on January 18. NBC purchased the real estate at the trustee's sale, reselling it two days later to another party. A deficiency of $317,039.52 remained on the VRP note following the trustee's sale.

NBC and VanEiser began negotiating a settlement agreement concerning the sale of VanEiser's assets. The members of VanEiser were all represented by counsel during the negotiations leading to execution of the settlement agreement. On January 20, 2012, Heiser's attorney emailed a draft settlement agreement to Ben Harris of NBC and to the attorneys for Bauer and Dagel. In his "[i]nitial comments" to the draft, emailed to Heiser, Bauer, and Dagel's attorneys on January 21, Harris requested certain changes to the draft, including a request that "Section 10" of the agreement:

> [M]ust carve out the fact that if the bank's loan is not fully satisfied, any deficiencies are still covered by existing pledges, the security agreement, the bill of sale, and any unwaivable Van[E]iser guarantees associated with the VRP loan. The bank and the SBA are unable to waive rights pertaining to the deficiency on the VRP building sale."

On January 23, 2012, NBC and VanEiser entered into a settlement agreement to sell the assets of VanEiser at public auction. With respect to distribution of the sale proceeds, paragraph 6 of the settlement agreement provided:

> VanEiser, the Members and NBC further agree that the proceeds of the Auction shall be applied first to satisfy any tax lien(s) having priority over NBC's security interest in the Assets, second to satisfy any indebtedness owed by VanEiser to NBC and any remaining proceeds to be returned to VanEiser and applied as agreed upon by the Members. Costs associated with the conduct of the Auction to be paid by VanEiser.

The settlement agreement, in paragraph 10 provided for a release of the members from claims by NBC, except:

> NBC DOES NOT RELEASE THE MEMBERS FROM ANY DEFICIENCY THAT THE MEMBERS HAVE GUARANTIED OR ARE OTHERWISE LIABLE FOR, WITH THE EXCEPTION OF THE RELEASE OF GUARANTIES SPECIFICALLY CONTEMPLATED IN PARAGRAPH 11 HERETO.

Paragraph 11 provides, "Upon execution of this Agreement, NBC shall release the Guarantees which are attached hereto as exhibits A, B, and C." There are no attachments included with the settlement agreement in the record on appeal.

On January 23, 2012, Lee Stuart, an NBC board member, sent an email to NBC president Chris Hove, noting that as VanEiser was a guarantor on the VRP debt "amounts above the minimum bid can help offset our loss on VRP, potentially." Hove replied, questioning whether NBC could "take proceeds from the sale of business assets of Van[E]iser and apply it to another note with another borrower, VRP."

On January 31, 2012, Jeffrey Meese, who was working with NBC on the sale of VanEiser assets sent an email to Stuart, copied to other NBC representatives, stating in part:

> NBC intends to collect as much of the VRP deficiency from the sale of the business assets [a]s possible. NBC will be conducting the auction, will collect the money at the sale of the auction [sic] and will distribute funds, therefore we will pay . . . the tax liens first and then the NBC debts. In addition all participants will be required to waive any and all liability on the part of the bank in conducting the auction (including VanEiser and [its] members).
>
> The bank's position is entirely and easily defensible and well within our rights, but it doesn't appear that the VanEiser members or their counsel have considered the VRP deficiency judgment in their calculations, therefore we would ask that this information be kept confidential.

On February 11, 2012, VanEiser's assets sold at public auction for $685,000. On March 1, NBC provided an accounting to VanEiser for the distribution of proceeds. That accounting showed that $46,738.37 was paid for taxes owed; $178,307.34 would go to pay off the VanEiser note; $13,429.47 would be paid to NBC to cover overages on one demand deposit account; $9,954.62 would be paid to NBC to cover overages on another demand deposit account; $317,039.62 would be paid to NBC to cover the deficiency on the VRP note; and $12,500 would be paid to NBC Bancshares for auctioneering services. The amount remaining, $107,030.58, would be returned to VanEiser. NBC concedes that this is the first notice given to VanEiser as to the deficiency on the VRP note and that NBC was seeking payment of the deficiency from VanEiser.

Upon receipt of the accounting, the members of VanEiser objected to the payment of the VRP note and the $12,500 auctioneering fee from the proceeds of the sale of VanEiser's assets. VanEiser did not object to the payment of the VanEiser note or the indebtedness created through

overdrafts on the demand accounts from the proceeds of the asset action. NBC has held the $317,039.62 and $12,500 in a separate account since VanEiser's objection was noted.

On June 1, 2012, VanEiser filed a complaint in the district court, claiming damages of $329,539.62, the amount being held by NBC. VanEiser set forth four theories of recovery, alleging that NBC breached the settlement agreement, that NBC wrongfully withheld the auction proceeds which constituted a conversion of VanEiser's property, that NBC breached a fiduciary duty to VanEiser, and that NBC fraudulently induced VanEiser to sign the security agreement which fraudulent inducement led VanEiser to sign the settlement agreement.

Trial was held before the district court on May 18-19, 2015. The court received various documentary exhibits into evidence and heard testimony from representatives of both VanEiser/VRP and NBC. We have already detailed the evidence above and have set forth additional evidence as necessary in the analysis section below.

On September 17, 2015, the district court entered an order, finding VanEiser failed to prove any of its claims against NBC relating to payment of the VRP note from the proceeds of the auction of VanEiser's assets. Accordingly, the court found that payment of the $317,039.62 deficiency from those funds was proper, and it entered judgment in favor of NBC on that claim. However, the court found that NBC was not entitled to an auction fee of $12,500, and it entered judgment in favor of VanEiser for that amount.

## ASSIGNMENTS OF ERROR

VanEiser asserts, reordered and restated, that the district court erred in finding that NBC did not (1) fraudulently induce VanEiser to enter into the settlement agreement, (2) breach the settlement agreement by applying the proceeds from the sale of the VanEiser assets to the VRP deficiency, (3) convert funds owed to VanEiser, and (4) breach a fiduciary duty owed to VanEiser.

On cross-appeal, NBC asserts that the district court erred in determining that NBC was not entitled to the $12,500 fee it charged for conducting the auction sale of the VanEiser assets.

## STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Donut Holdings v. Risberg*, 294 Neb. 861, 885 N.W.2d 670 (2016). An appellate court independently reviews questions of law decided by a lower court. *Id.* The meaning of a contract and whether a contract is ambiguous are questions of law. *Facilities Cost v. Otoe County School*, 291 Neb. 642, 868 N.W.2d 67 (2015). The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. *Gonzalez v. Union Pac. R.R. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

## ANALYSIS

### FRAUDULENT INDUCEMENT

VanEiser asserts that the district court erred in finding that NBC did not fraudulently induce VanEiser to enter into the settlement agreement. The court held that the settlement agreement was not fraudulently induced because VanEiser's members were represented by counsel at the time the

agreement was signed and the settlement agreement clearly contemplates payment of any indebtedness owed by VanEiser to NBC.

Fraud in the execution goes to the very existence of the contract, such as where a contract is misread to a party or where one paper is surreptitiously substituted for another, or where the party is tricked into signing an instrument he or she did not mean to execute. *Heritage Bank v. Bruha*, 283 Neb. 263, 812 N.W.2d 260 (2012). Fraud in the inducement, by contrast, goes to the means used to induce a party to enter into a contract. *Id.* In such cases, the party knows the character of the instrument and intends to execute it, but the contract may be voidable if the party's consent was obtained by false representations. *Id.*

Mere silence cannot constitute a misrepresentation absent a duty to disclose information. *Knights of Columbus Council 3152 v. KFS BD*, 280 Neb. 904, 791 N.W.2d 317 (2010). When a party makes a partial or fragmentary statement that is materially misleading because of the party's failure to state additional or qualifying facts, the statement is fraudulent. *Id.* Fraudulent misrepresentations may consist of half-truths calculated to deceive, and a representation literally true is fraudulent if used to create an impression substantially false. *Id.* To reveal some information on a subject triggers the duty to reveal all known material facts. *Id.* An ambiguous statement is fraudulent if made with the intent that it be understood in its false sense or with reckless disregard as to how it will be understood. *Id.*

At trial, Bauer did not recall any discussions with NBC representatives leading to the execution of the settlement agreement. Nor did he recall whether he read the settlement agreement before signing it. Dagel testified that NBC representatives Joel Clements and Harris demanded that he sign the settlement agreement, but Dagel did not testify that NBC made any other representations or other statements to him in connection with the agreement. Heiser testified he had no direct negotiations with anyone from NBC concerning the settlement agreement and that the negotiations were handled by his attorneys. Harris testified that he worked with one of Heiser's attorneys on the language in the settlement agreement, and as noted above, Harris' email reply concerning the draft of the agreement was directed to the various attorneys for the VanEiser members.

VanEiser agrees that its members were represented by counsel during negotiations of the settlement agreement, but it argues that by focusing on the absence of communications between NBC and the members of VanEiser, the district court failed to apply the correct law. VanEiser argues that by communicating through its attorneys and to VanEiser's attorneys, NBC "intended for its misinformation" to reach the members of VanEiser. Brief for appellant at 34. VanEiser argues that a reasonable interpretation of Harris' January 21, 2012 email request regarding paragraph 10 of the draft settlement agreement is that NBC intended to reserve its right to pursue the members on any guaranties they executed. VanEiser argues that it is not reasonable to interpret this email as notification that NBC intended to pay off the VRP deficiency with the asset auction proceeds. VanEiser argues that NBC "engaged in a persistent pattern of misleading statements and half-truths designed to deceive" VanEiser's members as to its intent. Brief for appellant at 36.

The district court noted the January 21, 2012 e-mail from Harris which requested that paragraph 10 of the settlement agreement contain language carving out from the release the VanEiser guaranties associated with the VRP loans. The court found paragraph 10 of the settlement

agreement, which carves out any liability for any deficiency that may be owed to NBC with the exception of the members' guarantee of the VanEiser debt, "instructive and perhaps determinative" of the fraud question. The court stated:

> There is no evidence in the record that this language could apply to anything other than the VRP deficiency. There is no evidence in the record that Bauer, Dagel or Heiser owed or guarant[e]ed any other debt at NBC. If not the VRP debt, then what debt was this language designed to exclude? The answer is that the parties were preserving the right of NBC to pursue the VRP deficiency, which is exactly what [Harris] wrote in [the January 21 email].

The district court further determined that any reliance on the January 31, 2012 "don't tell" email from Meese is misplaced as the email was sent eight days after the settlement agreement was signed and could not have induced the members to sign anything.

We find no error in the district court's determination that the members of VanEiser were not fraudulently induced to sign the settlement agreement. There is no evidence in the record that any representations were made by NBC to the VanEiser members or their counsel prior to the execution of the settlement agreement that were false or that NBC otherwise misled them with regard to NBC's intention to pursue the VRP deficiency through the guarantees. The district court was not clearly wrong in finding that the January 21, 2012 e-mail and paragraph 10 of the settlement agreement made this intention clear. We further agree that the January 31, 2012 e-mail is of no consequence in connection with this claim as it was sent after execution of the settlement agreement.

This assignment of error is without merit.

BREACH OF CONTRACT

VanEiser asserts that the district court erred in finding that NBC did not breach the settlement agreement by applying the proceeds from the sale of the VanEiser assets to the VRP deficiency.

The primary question on appeal is whether the provision in paragraph 6 of the settlement agreement that the proceeds of the auction of the VanEiser assets shall be applied to "satisfy any indebtedness owed" by VanEiser to NBC permitted NBC to apply the proceeds from the sale of VanEiser's assets to the VRP note. We conclude that the district court did not err in determining that the phrase "any indebtedness" owed by VanEiser to NBC included VanEiser's guarantee of the VRP note.

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Facilities Cost v. Otoe County School*, 291 Neb. 642, 868 N.W.2d 67 (2015). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id.* Extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous. *Id.* When a contract is unambiguous, the intentions of the parties must be determined from the contract itself. *Id.*

Neither party asserts the existence of any ambiguity with respect to paragraph 6 of the settlement agreement. We agree. Paragraph 6 unambiguously provides that the proceeds of the auction, after payment of tax liens having priority, are to then be applied to satisfy "any

indebtedness" owed by VanEiser to NBC. "Indebted" means "being bound or obligated to repay a monetary loan." Webster's Encyclopedic Unabridged Dictionary of the English Language 722 (1989). The word "indebtedness" means "1. state of being indebted. 2. an amount owed. 3. debts collectively." *Id.* Absent further modification, the term indebtedness encompasses both present and future debts. There is no limitation placed on the phrase "any indebtedness" in the settlement agreement. Further, there is nothing in the settlement agreement that releases VanEiser from its guarantee or security agreement. VanEiser guaranteed the VRP note, an indebtedness which had a deficiency at the time of the execution of the settlement agreement. The security agreement signed by VanEiser granted NBC a lien on all of VanEiser's assets to secure all obligations and indebtedness to NBC. The cross-collateralization clause of this security agreement provides, in part, that the agreement secures all debts of VanEiser to NBC, whether related or unrelated to the VanEiser note, and whether VanEiser is obligated as guarantor or surety.

VanEiser argues that the VanEiser guarantee is not an "indebtedness" owed by VanEiser to NBC because no demand for payment on the VRP note was made by NBC. VanEiser points to the provision of the guarantee that states "Guarantor [VanEiser] must pay all amounts due under the Note [VRP note] when Lender makes written demand upon Guarantor." VanEiser argues that until NBC made a written demand on VanEiser for payment, VanEiser did not owe anything for the VRP note. We disagree. While VanEiser did not have to pay the deficiency until a demand was made, the deficiency nevertheless was still an "indebtedness" under the provision of the settlement agreement.

As noted by the district court, under the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1013 (Reissue 2014), NBC had three months from the trustee's sale to pursue VRP on the deficiency. The auction occurred on January 18, 2012, which gave NBC until April 17 to commence an action "to recover the balance due upon the obligation for which the trust deed was given as security." On March 1, NBC sent VanEiser the accounting from the auction which set forth a deduction for collection of the VRP deficiency. Thus, the deficiency had been paid and there was no reason to make a separate demand for payment.

VanEiser argues that NBC's post-auction conduct contradicts its interpretation of the settlement agreement. VanEiser then cites various rules regarding the use of parol evidence. However, the general rule is that unless a contract is ambiguous, parol evidence cannot be used to vary its terms. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). An unambiguous contract is not subject to interpretation or construction, and in such a contract, the intention of the parties must be determined from its contents alone. *Id.* Testimony seeking to prove the parties' intent is considered parol evidence. *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015). Because we have found that paragraph 6 of the settlement agreement is not ambiguous, we decline to consider the parol evidence regarding NBC's post-auction conduct.

VanEiser also argues that the district court's determination that the security agreement justified NBC's actions is contradicted by both the settlement agreement and the security agreement. VanEiser cites the sixth "WHEREAS" clause of the settlement agreement, which provides:

WHEREAS, in consideration of the Auction to be conducted and execution of the Security Agreement and Bill of Sale, NBC has agreed to release the Members from any liability under the Guarantees and further to withhold execution on the Security Agreement and any other collateral currently held by NBC as collateral for the Note subject to the terms and conditions of this Agreement.

We disagree that this provision of the settlement agreement negated NBC's ability to satisfy "any indebtedness" owed by VanEiser to NBC from the proceeds of the auction. As we determined above, NBC was entitled to satisfy the VRP deficiency from the proceeds as a result of the VanEiser guarantee which was not released in the settlement agreement.

Finally, VanEiser argues that absent a specific provision in the settlement agreement to pay the deficiency on the VRP note, the only means for NBC to satisfy the deficiency would be to set-off against the auction proceeds. VanEiser argues that NBC did not have a right of set-off in this case because the proceeds were a special deposit, subject exclusively to the terms of the settlement agreement. VanEiser also argues that if NBC did not have a right to withhold proceeds from the auction to pay the VRP deficiency, its actions amounted to an unlawful conversion. We need not address either of these arguments, however, because we have already determined that the settlement agreement provided NBC with the right to pay the VRP indebtedness from the auction proceeds, pursuant to the VanEiser guarantee that was not released in the settlement agreement.

NBC did not breach the terms of the settlement agreement by withholding funds to satisfy the VRP deficiency.

BREACH OF FIDUCIARY DUTY

VanEiser asserts that the district court erred in finding that NBC did not breach a fiduciary duty owed to VanEiser. VanEiser acknowledges that the typical debtor/creditor relationship does not create a fiduciary duty, but it argues that by taking control over the operations of the Venue restaurant, NBC created a fiduciary duty to act solely in the best interest of VanEiser and its members. VanEiser argues that this duty was breached because, despite the improved profitability of the restaurant, no further rent payments were made, which led to VRP's default on the VRP note and the subsequent sales of the real estate and the VanEiser assets. VanEiser argues that NBC operated the restaurant for its own benefit, rather than the benefit of VanEiser's members.

VanEiser acknowledges that no Nebraska cases exist which find a fiduciary duty in a situation involving a bank exercising control over the business affairs of a borrower. Rather, VanEiser cites several out-of-state cases with respect to the issue of when a bank owes a fiduciary duty to a borrower.

The district court reviewed the evidence surrounding the transfer of management of Venue from the members of VanEiser to a consultant and found no evidence that NBC "undertook to act on behalf of or for the benefit of Van[E]iser or its members." The court concluded that NBC was always acting on its own behalf as a lender and not on behalf of VanEiser and that NBC did not owe VanEiser a fiduciary duty. We agree.

A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Gonzalez v. Union Pacific R.R. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

The record shows that the members of VanEiser agreed to resign the right to manage the restaurant in order to avoid having NBC call the Heiser pledge. The members of VanEiser selected a manager acceptable to NBC. It was in NBC's interest as a lender to prevent the restaurant from closing, and its sale as an operating restaurant generated sufficient funds to pay the VanEiser note, the overdrafts, and the VanEiser guarantee with money left over for the VanEiser members. Clearly, NBC was acting at all times as a lender and not as a fiduciary for VanEiser. This assignment of error is without merit.

### AUCTION FEE

On cross-appeal, NBC asserts that the district court erred in determining that NBC was not entitled to the $12,500 fee it charged for conducting the auction sale of the VanEiser assets.

As relevant to this assignment of error, paragraph 6 of the settlement agreement provides, "Costs associated with the conduct of the [VanEiser asset] Auction to be paid by VanEiser." "Costs" are not specifically defined in the agreement. The district court determined that this term was ambiguous and referred to testimony and other evidence admitted at trial in finding that NBC was not entitled to the $12,500 auction fee. The court noted the absence of any reference in the agreement to NBC charging an auction fee.

Harris testified to NBC's position that the auctioneering fee was a cost associated with the conduct of the auction as contemplated by paragraph 6 of the settlement agreement. Bauer, Dagel, and Heiser testified that they did not understand the "costs" referenced in paragraph 6 to mean an auctioneering fee or agree to pay such a fee. Exhibit 72 is an e-mail exchange between Harris and Heiser's attorney on January 2l, 20l2, in which Harris asked that language requiring VanEiser to pay the costs of the auction be added to the settlement agreement. According to Harris, NBC's charge of $12,500 was far below the industry standard of 5-percent of the sales price or higher, and was incurred by NBC in its efforts to organize and conduct the sale, and distribute the proceeds.

NBC argues that the construction of paragraph 6 is a matter of law for this court. VanEiser argues that the meaning of the ambiguous term "costs" was a question of fact and that we must defer to the district court in that regard. The meaning of a contract and whether a contract is ambiguous are questions of law. *Facilities Cost v. Otoe County School*, 291 Neb. 642, 868 N.W.2d 67 (2015). The meaning of an ambiguous contract is generally a question of fact. *Id.* We agree that the term costs, which is not defined in the settlement agreement is ambiguous, and a review of the record shows that the parties were not in agreement with respect to what the costs were and how they should be calculated. The district court did not err in determining that NBC was not entitled to the $12,500 fee it charged for conducting the auction sale of the VanEiser assets.

### CONCLUSION

The district court did not err in finding that NBC did not fraudulently induce VanEiser to enter into the settlement agreement and did not breach the settlement agreement by withholding

proceeds from the auction to pay the VRP deficiency. The district court further did not err in finding that NBC was not entitled to payment of an auction fee from the proceeds of the sale.

AFFIRMED.