IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ADELUNG V. HEIDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KENT A. ADELUNG, APPELLANT,

V.

LYNDA ADELUNG HEIDEN AND SHERALEE ADELUNG BOE, APPELLEES.

Filed November 17, 2020.    No. A-19-1170.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

Blake E. Johnson and Paul A. Lembrick, of Bruning Law Group, for appellees.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Kent A. Adelung appeals from the judgment entered by the Lancaster County District Court denying his request to recover payments of $232,645 that he made to each of his two sisters, Lynda Adelung Heiden and Sheralee Adelung Boe. Kent made the payments based upon provisions in the siblings' father's will which devised a remainder interest in certain real property to Kent, but required Kent to pay a portion of the fair market value of that property to each of his sisters. After making the payments, Kent later believed the will provisions were unenforceable, so he brought an action to rescind a settlement agreement he alleged existed between his sisters and him in his effort to recover the payments. We affirm.

## BACKGROUND

The transactions in dispute stem from terms contained in the will of the siblings' father, Charles Adelung. Charles died testate in November 1987, and the "Last Will and Testament of

Charles L. Adelung" was probated in Buffalo County, Nebraska. Charles' widow, Madeline Adelung, and Lynda acted as personal representatives for Charles' estate. Charles devised about 200 acres of land to Madeline for life, giving a remainder interest to Kent. As consideration for Kent ultimately receiving the land, the will required that Kent pay Lynda and Sheralee each 20 percent of the land's appraised value at the time Kent took possession. Paragraphs VI and VII of Charles' will, the provisions at issue in this appeal, provided:

VI.

I give, devise and bequeath a life estate in all my land located in Section Twenty-One (21), Township Ten (10) North, Range Seventeen (17) West of the Sixth P.M., Buffalo County, Nebraska, to my Wife, MADELINE A. ADELUNG, and she is to have the income therefrom during her lifetime, subject to the obligation to keep and maintain the property and to pay real estate taxes thereon. Upon her death, or upon my death if she predeceases me, the remainder interest shall pass absolutely to my son, KENT A. ADELUNG, subject to terms and conditions as hereinafter provided.

VII.

Upon the death of my wife, MADELINE A. ADELUNG, or upon my death if she predeceases me, I direct that within ninety (90) days following such event, the land described above be appraised by at least two licensed real estate appraisers in order to determine the fair market value thereof. In the event it is necessary to probate any Last Will and Testament of my wife or administer her estate, I respectfully request that the court in charge of such appoint two appraisers for this purpose. In the event there is no probate or administration concerning my wife's estate, then I direct that my children appoint two appraisers for this purpose. In such event, my daughters, jointly, shall appoint one such appraiser and my son shall appoint one appraiser. The appraisers shall separately appraise the property to determine the fair market value of the real estate as of the date of my wife's death. In the event there is a difference in the appraisals, the average thereof shall be considered the fair market value for the purposes provided herein. I direct that my son, KENT A. ADELUNG, in consideration of his receiving the remainder interest in said land, to [sic] pay twenty percent (20%) of the appraised value to my daughter, SHERALEE ADELUNG BOE, and twenty percent (20%) of the appraised value to my daughter, LYNDA ADELUNG, with such payments to be under terms and conditions as they may be able to agree in writing among themselves.

In the event they are unable to agree on terms of payment, then I direct that such payment will be in cash and shall be paid in full within one year after the fair market value is finally determined. I direct that such payments to my daughters shall constitute a lien upon said real estate.

Following the probate of Charles' estate, a Deed of Distribution was filed in Buffalo County conveying a life estate in the land to Madeline and a "[c]onditional remainder" to Kent. The Deed of Distribution stated that Kent's remainder was "subject to certain conditions in favor of SHERALEE ADELUNG BOE and . . . LYNDA ADELUNG HEIDEN, all as contained in Decedent's Last Will and Testament, which was probated in the County Court of Buffalo County, Nebraska[.]"

In October 2014, Madeline passed away, and Lynda was appointed to serve as the personal representative of her estate. She retained attorney Patrick Nelson to assist in the administration of Madeline's estate. Pursuant to Charles' will and the Deed of Distribution, Kent took possession of the real estate. Kent, Lynda, and Sheralee had the land appraised in accordance with the terms of Charles' will. The average fair market value for the land was $1,163,225, and 20 percent of that value was $232,645.

During the probate of Madeline's estate, Lynda discovered irregularities in Madeline's finances that caused her to question whether Kent would pay the amounts owed to her and Sheralee as designated in Charles' will. Lynda asked Kent on a few occasions how he planned to pay her and Sheralee their shares. Kent testified that in November 2014, he told Lynda that he was going to sell some land to pay her and Sheralee according to the terms of Charles' will. He additionally sent an email in December 2014 to Nelson stating that he planned to sell some land to pay Lynda and Sheralee.

In early 2015, Kent sought to sell a portion of the inherited real estate. While browsing a realtor website, Lynda discovered a notice of pending sale for the land. Neither she nor Sheralee had received notice of Kent's pending sale prior to her discovery of the sale through a third-party website. On April 24, 2015, Kent and his wife conveyed the portion of land to a third party.

After her discovery of the notice of pending sale, Lynda approached Nelson for advice. Nelson advised that Lynda and Sheralee, as lien claimants by the terms of Charles' will, had the right to receive notice of any sale of the land. He recommended that the sisters file a declaratory judgment action, and they did so in the district court for Buffalo County on May 5, 2015. The complaint sought a judgment declaring that the sisters had a lien against the land in accordance with their father's will, and that the lien would remain in effect until such time as the amounts owed to them under the will were paid in full.

On or about July 7, 2015, Kent paid Lynda and Sheralee $232,645 each in accordance with Charles' will, and about that same time Kent conveyed a second parcel of the inherited real estate to another third party. After receiving the payments, Lynda and Sheralee dismissed their declaratory judgment complaint without prejudice and recorded a release in Buffalo County acknowledging Kent's satisfaction of his obligations under Charles' will. The parties testified at trial that there had not been negotiations for settlement or any sort of agreement. Kent had not offered to pay Lynda and Sheralee in exchange for their dismissal of the lawsuit, and the sisters had not offered to dismiss their suit in exchange for Kent's payment under Charles' will.

At some point after making the payments to his sisters in 2015, Kent retained new counsel who advised him that the provisions of Charles' will requiring Kent to make payments to Lynda and Sheralee were invalid. Kent then filed a complaint against his sisters in March 2017, asking the district court to "rescind the settlement agreement and place the parties in their positions occupied prior to the settlement agreement" and award Kent damages.

At trial, Kent claimed the provisions of Charles' will described above were invalid and did not impose a legal obligation on him to pay his sisters. Despite Charles' clearly manifested intent in his will, Kent affirmed at trial that "[i]f he knew the conditions of Charles' will were invalid," he would not have made the payments to Lynda and Sheralee. He argued the district court should rescind the settlement agreement between him and his sisters on the grounds of failure of consideration, mutual mistake, unilateral mistake, mistake of law, duress, fraud, misrepresentation,

and unconscionability. Additionally, Kent claimed that Lynda, as personal representative for Madeline's estate, owed him fiduciary duties as Madeline's heir and devisee, and she breached those duties by filing the declaratory judgment action against him in 2015.

The district court determined that no settlement agreement, express or implied, existed with respect to Kent's payments to his sisters. The court noted the lack of communication between Kent and his sisters concerning the declaratory judgment complaint and found that Kent paid his sisters with the intent to satisfy his obligations under Charles' will rather than as part of any agreement between him and his sisters related to the declaratory judgment action. Finding no agreement existed and that Kent failed to "alternatively plead or argue that, if there was no contract, . . . his sisters should disgorge the payments under an unjust enrichment theory," the court denied Kent's request for relief.

Further, the district court alternatively determined that even if a settlement agreement existed between Kent and his sisters, Kent failed to meet his burden to prove his entitlement to rescission of such an agreement. The court found that any purported settlement was adequately supported by consideration, as there was a bona fide dispute concerning the enforceability of paragraphs VI and VII of Charles' will. The court also stated that Kent bore the risk of mistake in paying Lynda and Sheralee and therefore could not rescind any such settlement agreement on the basis of mistake. The court similarly found no justification to rescind a settlement agreement on the bases of duress, fraud, misrepresentation, or unconscionability. The court then determined that Kent failed to show that Lynda breached her fiduciary duties as personal representative of Madeline's estate, as the real estate at issue was not part of her estate. On these bases, the district court entered judgment in favor of Lynda and Sheralee.

Kent timely appealed.

ASSIGNMENTS OF ERROR

Kent assigns nine errors on appeal which do not directly correlate with the four main argument sections of his brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020). Restated and reordered, the assignments of error which are sufficiently addressed in the argument section of the brief are as follows: the district court erred in (1) denying him relief under rescission principles, (2) determining he did not plead or argue restitution and unjust enrichment, (3) "failing to recognize the inequitable significance" of an attorney's conflict of interest due to his attorney-client relationship with Kent and his sisters, and (4) failing to determine the conditions in the will were unenforceable for various reasons.

STANDARD OF REVIEW

An action for rescission sounds in equity. *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight

to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020).

## ANALYSIS

### RESCISSION

As noted by the district court, the first seven counts of Kent's complaint asked the court to rescind an alleged settlement agreement under various grounds. However, the district court concluded that the evidence did not show that the siblings mutually intended to make a contract related to the dismissal of the declaratory judgment action. The court found, "They never talked about dismissing the declaratory judgment action in exchange for payment. Rather, Kent had decided to pay his sisters before they filed the declaratory judgment complaint." Acknowledging and citing to *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 825 N.W.2d 767 (2013), for the proposition that a court can rescind a contract for fraud, duress, unilateral or mutual mistake, or inadequacy of consideration, the district court concluded that in this instance, "there is no contract to rescind." Further the court concluded there was no implied contract either.

We first address the principles of law governing both express and implied contracts. Regardless of whether the agreement is express or implied, a settlement agreement is subject to the general principles of contract law. See *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Acklie v. Greater Omaha Packing Co.*, 306 Neb. 108, 944 N.W.2d 297 (2020). To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000). See, also, *Furstenfeld v. Pepin*, 23 Neb. App. 155, 869 N.W.2d 353 (2015). An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Donut Holdings v. Risberg*, 294 Neb. 861, 885 N.W.2d 670 (2016).

We note that all three siblings testified that there was no written or oral agreement between them concerning Kent making the payments called for by Charles' will and the sisters' dismissal of their lawsuit. Further, Kent and Lynda testified that their conversations concerning payment were limited to Lynda asking on separate occasions when she and Sheralee would be paid according to Charles' will and Kent telling Lynda that "in order to pay, [he would] have to sell off some of the property." These conversations occurred before the sisters filed the declaratory judgment action on May 5, 2015. In addition, Kent affirmed at trial that he reached his decision to sell portions of the land to pay Lynda and Sheralee prior to May 5.

In light of the record before us, we agree with the district court that no express or implied settlement agreement concerning Kent's payments to Lynda and Sheralee came into existence. Although Kent now claims he would disregard Charles' testamentary intent that his sisters receive some portion of Charles' estate, Kent made the payments to Lynda and Sheralee in independent

adherence to his father's testamentary wishes. Therefore, there is no settlement agreement, express or implied, to rescind.

The trial court alternatively addressed grounds for rescission as though a settlement agreement had existed, however, we find it unnecessary to do so. The evidence is clear that there was no express or implied settlement agreement between the siblings indicating that Kent paid the sisters for any other reason than to honor the intent of his father's will. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018).

## RESTITUTION AND UNJUST ENRICHMENT

The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996). The district court concluded that "Kent did not alternatively plead or argue that, if there was no contract, then his sisters should disgorge the payments under an unjust enrichment theory." However, Kent asserts that the district court "erred in determining that Kent did not plead or argue an unjust enrichment theory." Brief for appellant at 29-30. Kent also claims the district court "erred in determining Kent's cause of action failed because Kent's Complaint failed to allege facts adequate to create restitution liability under a restitution fact pattern." *Id.* at 30. However, the district court did not determine Kent's claim for restitution failed because he failed to allege sufficient facts; rather, the court solely concluded that Kent failed to plead restitution as a separate theory of recovery.

We agree with the district court that Kent failed to plead unjust enrichment as a theory for relief in restitution. Each of the seven counts in the complaint addressing Kent's payments to his sisters asked the court to "rescind the settlement agreement and place the parties in their positions occupied prior to the settlement agreement." Further, the record offers no indicia that Kent presented an argument premised on the unjust enrichment of Lynda and Sheralee. Neither the pleadings nor the evidence suggested that the sisters' receipt of the payments from Kent in accordance with their father's will constituted improper or unconscionable conduct. See 66 Am. Jur. 2d Restitution and Implied Contracts §§ 1, 3 (2011) (restitution means return of money obtained through improper means; recipient of benefit is unjustly enriched if unconscionable for recipient to retain benefit).

Unjust enrichment as a theory of relief in restitution simply was not presented by Kent either through pleadings or the evidence at trial as a basis for recovering the payments he made to his sisters. Like the district court, we decline to consider this argument further. An appellate court reviews a case on the theories pursued by the parties and not on a theory that the parties might have raised, as an appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried. See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

## ATTORNEY CONFLICT OF INTEREST

Kent argues that "[s]everal of [his] theories of restitution based on rescission require showing inequitable or unconscionable circumstances[,]" and that "[s]uch inequitable circumstances are shown, inter alia, by Mr. Nelson's involvement in the case." Brief for appellant at 28. Kent suggests that attorney Nelson's involvement in Madeline's estate, in which Kent had

an interest, and Nelson's handling of the sisters' declaratory judgment action against him, "created inequitable circumstances" in support of his action for rescission. *Id*. at 29. However, since we have already concluded that Kent's action for rescission failed for lack of an express or implied agreement, we need not address this assigned error further. See *Weatherly v. Cochran, supra* (appellate court is not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

ENFORCEABILITY OF CHARLES' WILL

Kent sets forth several arguments as to why the "conditions in Charles' will were void and unenforceable" by his sisters. Brief for appellant at 16. He contends that "[u]nder theories of rescission for lack of consideration, mistake, material misrepresentation, and unconscionability, Kent is entitled to recovery [of] the payments made to his sisters in restitution." *Id*. Again, since we have already concluded that Kent's action for rescission failed for lack of an express or implied agreement, we need not address this assigned error further. See *Weatherly v. Cochran, supra* (appellate court is not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.